Ronald J. SOLNOSKY, Gary L. Miller, and Medical Marketing Resources SE, Inc., Appellants-Plaintiffs/Cross-Appellees-Counterclaim Defendants,

v.

Karen R. GOODWELL, Derrick H. Wilson, and Mattox, Mattox & Wilson, Appellees–Defendants/Cross–Appellants–Counterclaim Plaintiffs.

No. 22A05–0708–CV–456.

Court of Appeals of Indiana.

Aug. 15, 2008.

Rehearing Denied Oct. 10, 2008.

John H. Dwyer, Jr., Janice M. Theriot, Zielke Law Firm, Louisville, KY, Attorneys for Appellants.

Richard T. Mullineaux, R. Jeffrey Lowe, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Ronald J. Solnosky appeals the trial court's reduction of the jury's $1,491,886 verdict in favor of Solnosky and against Karen R. Goodwell, Derrick H. Wilson, and Mattox, Mattox & Wilson ("the Law Firm") (collectively, "the Lawyers") on his legal malpractice claim. Solnosky, Gary L. Miller, and Medical Marketing Resources SE, Inc. ("Medical Marketing") (collectively, "the Clients"), appeal the trial court's grant of the Law Firm's motion for judgment on the evidence on its counterclaim against the Clients for unpaid attorney's fees. The Lawyers cross-appeal the trial court's denial of their motion for judgment on the evidence on Solnosky's malpractice claim. We affirm the denial of the Lawyers' motion for judgment on the evidence, reverse as to the remaining issues, and remand with instructions to reinstate the jury's verdict.

### Issues

The Lawyers raise the following potentially dispositive issue on cross-appeal:

I. Did the trial court err in denying their motion for judgment on the evidence on Solnosky's legal malpractice claim?

Solnosky raises the following issues:

II. Did the trial court err in granting the Lawyers a setoff for a settlement involving different parties in a different action?

III. Did the trial court err in reducing the verdict by apportioning attorney's fees among the Clients?

The Clients raise the following issue:

IV. Did the trial court err in granting the Law Firm's motion for judgment on the evidence on its counterclaim for unpaid attorney's fees?

### Facts and Procedural History

Given that many of the relevant facts adduced at trial do not differ materially from the facts designated by the parties at the summary judgment stage, we restate the facts and procedural history section from this Court's previous memorandum decision in this case in its original format:

In 1997, OpenSided MRI, LLC ("OpenSided") hired Solnosky as a manager at its Jeffersonville facility. Initially, his duties

primarily consisted of performing MRI scans. Eventually, his duties included marketing, and by late 1999, he was marketing full-time for OpenSided.

Miller was an independent contractor for and former officer of MMR Holdings, the managing member and majority stockholder of OpenSided. In March 2000, Miller approached Solnosky about developing a physician-owned MRI center for the Louisville, Kentucky, area. By then, Solnosky had been promoted to General Manager of OpenSided's Jeffersonville site. He also held the title of Regional Vice President of Marketing.

Miller asked Solnosky to contact physicians who referred patients to OpenSided to discuss investing in the new facility. Solnosky contacted two physician/customers of OpenSided, who, in turn, recruited other investors for the new business. On May 1, 2000, the investors met with Solnosky and Miller regarding the project and signed an operating agreement. The new company, Kentuckiana Diagnostics, LLC, was organized under Indiana law. Solnosky was to be appointed as a manager of Kentuckiana Diagnostics under the operating agreement.

During a second organizational meeting on May 31, 2000, Kentuckiana Diagnostics' attorney, John Johnson, discussed with Solnosky his position with OpenSided. Johnson suggested that Solnosky seek independent counsel concerning his duties to OpenSided. Johnson, a Kentucky attorney, followed up with a letter to Solnosky dated June 2, 2000, recommending that Solnosky obtain legal advice about his responsibilities to OpenSided under Indiana law. According to the letter, Solnosky had represented to Johnson that his position with OpenSided was "largely one of title only" and that Solnosky had "not been placed in a fiduciary relationship" with OpenSided. Johnson provided Solnosky with a copy of

a Kentucky Supreme Court case, *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991), to use as a "point of reference" in discussing with his own counsel his responsibilities to OpenSided under Indiana law. "This case," Johnson wrote, "addresses the responsibility that an officer and director owes to his current employer when seeking to establish a competing business."

Upon receiving Johnson's letter, Solnosky contacted the Law Firm and was referred to attorney Karen Goodwell. The two met on June 6, 2000, and Solnosky employed Goodwell to provide advice concerning his duties under Indiana law to his current employer, OpenSided, in relation to his preparations to organize Kentuckiana Diagnostics. Goodwell sent two advisory letters to Solnosky, one dated June 9, 2000, the other, June 13, 2000. Goodwell advised that, based on their conversations, Solnosky's "title and duties do not place [him] in a fiduciary capacity as opposed to someone who is an officer or director.... As the result of the fact that [he is] not a shareholder of OpenSided, there are no concerns about fiduciary duties of shareholders." Goodwell did not caution Solnosky that he should refrain from actively soliciting OpenSided's customers for the new business while still employed by OpenSided.

Sometime prior to the opening of the Kentuckiana Diagnostics facility in early October 2000, OpenSided filed a lawsuit against the Clients, along with Kentuckiana Diagnostics and ten physician-investors. OpenSided alleged, in part, that Solnosky and Miller solicited investments from OpenSided's client doctors for the new facility, that Solnosky "usurped OpenSided's corporation opportunities," that Solnosky was aided by the other defendants in breaching his fiduciary duties to OpenSided, and that the defendants conspired in

"tortuous [sic] interference with existing and prospective business relationships." [The Clients were originally represented by Goodwell and Wilson in this action, which was tried in the Clark Circuit Court ("the Clark County Action"). After Goodwell and Wilson withdrew, Susan Williams of Frost Brown Todd, LLC, represented the Clients.]

The Clients admitted liability in the lawsuit filed by OpenSided, and a jury was convened on March 9, 2004, to determine damages. Judgment was entered on June 14, 2004, holding the Clients jointly and severally liable to OpenSided in the amount of $491,726. [Prior to the Clients' trial on damages, Kentuckiana Diagnostics settled with OpenSided for $375,000 in exchange for the release of the physician-investors from the Clark County Action and another case pending in a Kentucky federal district court.]

Thereafter, the Clients sued Goodwell, the Law Firm that employs her, and Wilson for legal malpractice related to Goodwell's advice to Solnosky regarding his duties as an employee of OpenSided. The Clients also asserted in their complaint that Miller and Medical Marketing [a "shell company" owned by Miller's wife [1]] detrimentally relied upon Goodwell's advice to Solnosky about his duties to his then-current employer, OpenSided.

The Lawyers filed a motion for summary judgment, which the trial court granted.

\* \* \*

*Solnosky v. Goodwell,* No. 22A04–0411–CV–6232, slip op. at 2–5, 833 N.E.2d 1105 (Ind.Ct.App. Aug. 18, 2005) (citations to appendix omitted).

In addressing the Clients' appeal, we held as follows: (1) that a genuine issue of material fact existed regarding whether Goodwell breached her duty to Solnosky when advising him on his duty to OpenSided; (2) that the undisputed facts established that Goodwell did not have an attorney-client relationship with Miller and Medical Marketing such that she could be liable to them for their detrimental reliance on her legal advice to Solnosky; and (3) that a genuine issue of material fact existed regarding whether the Law Firm was organized as a general partnership that could render Wilson vicariously liable for Goodwell's acts. We affirmed the trial court's judgment in part, reversed it in part, and remanded for further proceedings.

A jury trial commenced on April 9, 2007. During trial, the Lawyers filed a motion for judgment on the evidence on Solnosky's malpractice claim, which the trial court denied. The Lawyers also moved for judgment on the evidence on the Law Firm's counterclaim against the Clients for unpaid attorney's fees; the trial court granted that motion but withheld entry of judgment pending the verdict. On May 3, 2007, the jury returned a general verdict finding the Lawyers 100% at fault and awarding Solnosky $1,491,886 in damages.

On June 4, 2007, the Lawyers filed a motion to correct error seeking either a new trial or reduction of the verdict on various grounds. On July 10, 2007, after a hearing on the motion, the trial court entered final judgment on the Law Firm's counterclaim in the amount of $26,013. Also on that date, the trial court entered final judgment on the jury's verdict in the amount of $1,465,873 ($1,491,886–$26,013 = $1,465,873). Additionally, the trial court entered an order granting the Lawyers' motion to correct error that reads in pertinent part,

1. Tr. at 686.

1. Defendants are entitled to a set-off against the verdict rendered in this cause in the amount of $375,000.00 based on the credit Plaintiff should have received on the judgment rendered on March 12, 2004 against Plaintiff, Ronald J. Solnosky, in the [Clark County Action] in the total amount of $491,726.00. Such credit represents the amount paid by Kentuckiana Diagnostics, LLC to compromise and settle the claim made by OpenSided MRI of Louisville, LLC against Kentuckiana Diagnostics, LLC and to release the members of such LLC and its physician investors from the underlying case and the release of the physician investors in another then pending case in the United States District Court for the Western District of Kentucky. After application of the credit, the amount of the judgment in the underlying case for which Plaintiff, Ronald J. Solnosky is responsible, is $116,726.00 together with interest at the rate of 8% per annum from March 14, 2004 to July 10, 2007.

2. The amount of the verdict rendered by the jury in this cause as to the attorney fees incurred by Plaintiff, Ronald J. Solnosky, in defending the underlying cause [i.e., the Clark County Action] is not supported by the evidence and is directly contrary to the evidence in that Frost Brown Todd, LLC was also representing Gary L. Miller and Medical Marketing Resources SE, Inc. d/b/a Physicians Imaging, who were co-defendants with Plaintiff, Ronald J. Solnosky, in the underlying case. No engagement letter or Contract for Legal Services signed by Plaintiff, Ronald J. Solnosky, or the other Defendants with Frost Brown Todd, LLC was admitted into evidence nor did Frost Brown Todd, LLC set up separate accounts for each client dividing their responsibilities for expenses, fees and costs. Plaintiffs, Miller and Medical Marketing Resources SE, Inc. all received a benefit from Frost Brown Todd, LLC's representation as testified to by Susan Williams. It is appropriate to attribute an equally divided share of Frost Brown Todd, LLC's fees between Plaintiffs, Miller and Medical Marketing Resources SE, Inc., based on the reasoning set forth in Defendants' Motion to Correct Errors. The Court finds that $272,673.30 of Frost Brown Todd, LLC's fees should be attributed to Plaintiff, Ronald J. Solnosky, together with simple interest at 12% per annum from March 12, 2004 to July 10, 2007. The 12% simple interest is based on the testimony of Susan Williams and Plaintiff's Exhibit "31".

3. Pursuant to Indiana Trial Rule 59(J)(3) and (5) the Court finds that the amount of the judgment that is supported by the evidence is $529,523.60 computed as follows:

a.) $147,835.90 on the Judgment rendered by the Clark Circuit Court in the underlying cause which includes interest at the rate of 8% per annum from and after March 12, 2004 to and including July 10, 2007 ($116,726.00 × 8% = $9,338.08 per year ÷ 365 = $25.5838 per day × 1,216 days).

b.) $381,687.70 attributable to Plaintiff, Ronald J. Solnosky, on the attorney fees due Frost Brown Todd, LLC, for defending Plaintiff, Ronald J. Solnosky, Gary L. Miller and Medical Marketing Resources SE, Inc. in the underlying action which includes interest at the rate of 12% per annum from and after March 12, 2004 to and including July 10, 2007 ($272,673.30 × 12% = $32,720.80 per year ÷ 365 = $89.65 per day × 1,216 days).

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that De-

fendant[s'] Motion to Correct Error is granted and final Judgment in favor of the Plaintiff, Ronald J. Solnosky, and against the Defendants, Karen R. Goodwell, Derrick H. Wilson and Mattox, Mattox & Wilson, in the amount of $529,523.60 is hereby entered. Interest on such sum shall accrue at the rate of 8% per annum until paid. This is a final appealable order and there is no just reason for delay in the entry of final judgment.

Appellants' App. at 16–19.

This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Denial of the Lawyers' Motion for Judgment on the Evidence

■■■ Because the issue is potentially dispositive, we first address the Lawyers' cross-appeal argument that the trial court erred in denying their motion for judgment on the evidence on Solnosky's legal malpractice claim. Our standard of review in such cases

> is the same as the standard governing the trial court in making its decision. Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper.

*Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind.Ct.App.2007) (citations omitted).

■■ Under Indiana law, the elements of legal malpractice are as follows: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Clary v. Lite Mach. Corp.*, 850 N.E.2d 423, 430 (Ind.Ct.App.2006). In our prior decision in this case, we noted that there was "little question that Goodwell and Solnosky had an attorney-client relationship" and then addressed

> Goodwell's alleged breach of duty to exercise ordinary skill and knowledge when advising Solnosky about his fiduciary duties to OpenSided while in OpenSided's employ.
>
> Here, Goodwell advised Solnosky, "Based on our conversations, your title and duties do not place you in a fiduciary capacity as opposed to someone who is an officer or director." Goodwell was aware that Solnosky was still employed by OpenSided when he sought her advice, even though she was unaware that Solnosky had already solicited two of OpenSided's customers regarding their interest in investing in the new facility. In Indiana, the duty of loyalty owed by an employee encompasses the duty not to solicit the customers of one's own employer before termination of employment. *Potts v. Review Bd. of Indiana Employment Sec. Div.*, 475 N.E.2d 708, 712 (Ind.Ct.App.1985), *trans. denied* (1986). After reviewing the Lawyers' designated evidence on this issue, we believe that a genuine issue of material fact exists as to whether Goodwell breached her duty to Solnosky to utilize ordinary skill and knowledge on his behalf by failing to advise him on Indiana law relating to his duty of loyalty to OpenSided and on the extent of that duty.

*Solnosky*, slip op. at 6–7 (citation to appellants' appendix omitted).

On appeal, the Lawyers do not dispute that Goodwell owed and breached a duty to Solnosky and instead focus solely on proximate cause, which "requires that there be a reasonable connection between the defendant's allegedly negligent conduct and the plaintiff's damages. Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct." *Clary*, 850 N.E.2d at 430 (citation and quotation marks omitted). Our supreme court has stated that proximate cause "is primarily a question of fact to be determined by the jury." *Vernon v. Kroger Co.*, 712 N.E.2d 976, 981 (Ind.1999).

In our prior decision, we addressed proximate causation as follows:

The Clients ... argue that the trial court erred in determining that there was no genuine issue of material fact as to whether Goodwell's legal advice to Solnosky was the proximate cause of the damages ultimately awarded OpenSided in their lawsuit against him. More specifically, the Clients argue that although Solnosky had already solicited two of OpenSided's customers before seeking Goodwell's advice, his reliance on that advice kept him from being able to "mitigate and minimize" his damages from the future lawsuit by withdrawing from further involvement with Kentuckiana Diagnostics. In the designated evidence, Solnosky expressly testified that he would have withdrawn from the project had he been correctly advised that his actions violated the duty of loyalty he owed to OpenSided.

In support of their motion for summary judgment, the Lawyers designated portions of depositions taken from Goodwell and Solnosky regarding their conversations about his obligations to OpenSided and Kentuckiana Diagnostics. The Lawyers also designated testimony from several physicians who invested in Kentuckiana Diagnostics to show that because the project would have continued, even without Solnosky's involvement, his withdrawal from the project would not have minimized his damages. The Lawyers maintain that their evidence shows that, even if Solnosky had received correct legal advice from Goodwell and had withdrawn from the project, OpenSided still would have had grounds for their civil lawsuit against him and Kentuckiana Diagnostics because he did not play an integral or important role in the company's development. The physicians' testimony emphasized that their decisions to invest and become engaged in the project were not influenced by the fact that Solnosky was involved. This evidence fails to establish as a matter of law that but for Goodwell's advice, Solnosky still would have been fully liable for his breach of duty to OpenSided. While the Lawyers' designated evidence shows that Solnosky would have withdrawn from the project if he had received correct advice, the materials do not establish what the physician investors would have done had they learned of the liability that could be imputed to Kentuckiana Diagnostics because of Solnosky's breach. The materials also do not establish what Miller or Medical Marketing may have done had they learned of their risk of a lawsuit from OpenSided. Therefore, there remain genuine issues of material fact regarding what may have happened during the four months between Goodwell's advice and Kentuckiana Diagnostics's opening. The Lawyers have not met their burden of proving that under no set of facts could Solnosky have minimized his damages if he had received correct legal advice concerning his actions. We reverse the entry of summary judgment against Solnosky.

*Solnosky,* slip op. at 7–9 (citation to appellants' brief omitted).

On appeal, the Lawyers claim that the evidence at trial established that Solnosky was a sufficiently minor player in the formation of Kentuckiana Diagnostics that his decision to abandon the project would not have prevented its opening and consequently minimized his damages. The Lawyers also claim that when Solnosky received his opinion letter from Goodwell in June 2000, Kentuckiana Diagnostics' physician-investors were the only ones "who had the power to stop the project" and, pursuant to the operating agreement, "could only do so if 75% of them agreed to cancel Kentuckiana." Appellees' Reply Br. at 9. The Lawyers point out that this did not occur, despite the fact that Open-Sided filed its lawsuit before Kentuckiana Diagnostics opened for business.

We note, however, that when Gary Miller was asked whether he would have "gone forward" with Kentuckiana Diagnostics if Goodwell's opinion letter had concluded that Solnosky's "conduct and his rights, responsibilities and duties to Open-Sided were such that there may be a risk of a lawsuit to you," he responded, "Absolutely not." Tr. at 661. Miller further testified, "[I]f [Goodwell] had said that you may have a problem with fiduciary with Ron and it could extend to your investors and all that I would have stopped it immediately." *Id.* at 741.

At one point, Miller acknowledged that "the decision not to go forward with the business after the Operating Agreement was signed, the only way to do that was with a 75% super majority vote of the investors[,]" which did not occur, *id.,* but he also testified that as of June 2000, he was the one person whose "disappearance could stop the progress" of Kentuckiana Diagnostics. *Id.* at 665. We take this to mean that Miller was the one man who could have pulled the plug on the venture, notwithstanding the "corporate niceties" of the operating agreement, as Solnosky puts it. Appellants' Reply Br. at 18. Miller testified that he was the "primary author" of the company's business plan, *id.* at 610; that he alone was responsible for negotiating the financing for the company's MRI machine and negotiating the lease for and construction of the office space; and that instead of opening Kentuckiana Diagnostics, he "could have gone right to Indianapolis [to open an MRI center] because that was on [his] plan too." *Id.* at 662. Even Goodwell conceded that it was her "understanding that Mr. Miller, in fact, was the, the brains behind the whole business." *Id.* at 476. We conclude that this evidence, viewed most favorably to Solnosky, would allow reasonable people to differ as to whether Solnosky's damages could have been minimized had Goodwell given him correct legal advice.[2] Therefore, we affirm the trial court's denial of the Lawyers' motion for judgment on the evidence.

## II. Setoff of Kentuckiana Diagnostics' Settlement

On the Lawyers' motion, the trial court reduced the jury's $1,491,886 verdict in favor of Solnosky pursuant to Indiana Trial Rule 59(J), which reads in pertinent part as follows:

> The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some

2. In our prior decision in this case, we held that Goodwell and the Lawyers did not have an attorney-client relationship with Miller and therefore owed no duty to him. *Solnosky,* slip op. at 10. We note, however, that Goodwell testified at trial that she had understood that Miller would receive a copy of her opinion letter to Solnosky. Tr. at 476.

of the parties and all or some of the errors:

. . .

(3) Alter, amend, modify or correct judgment;

. . .

(5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur[.]

In *City of Carmel v. Leeper Electric Services, Inc.*, we explained that the remedy offered by Trial Rule 59(J)(5)

is available only where the evidence is insufficient to support the verdict as a matter of law. Moreover, the trial judge sits as a "thirteenth juror" and must determine whether in the minds of reasonable persons a contrary verdict should have been reached. The trial judge, as a "thirteenth juror," hears the case along with the jury, observes the witnesses for their credibility, intelligence, and wisdom, and determines whether the verdict is against the weight of the evidence.

Once the trial court has entered final judgment on the evidence for the amount of proper damages, we will reverse this decision only for an abuse of discretion. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. An abuse of discretion also results where a trial court's decision is without reason or is based upon impermissible reasons or considerations.

In determining whether the trial court properly entered final judgment on the evidence, this court employs the same standard of review as the trial court. We must only consider the evidence and reasonable inferences favorable to the non-moving party. We may not weigh conflicting evidence or judge the credibility of witnesses because of the constitutional right under Article 1, Section 20 of the Indiana Constitution to have a jury perform the fact-finding functions.

805 N.E.2d 389, 392 (Ind.Ct.App.2004) (citations omitted), *trans. denied.*

Solnosky claims that the trial court erred in granting a setoff for Kentuckiana Diagnostics' $375,000 settlement with OpenSided in the Clark County Action. Initially, we note that the setoff issue was never raised at trial and that the trial court granted the Lawyers' motion in limine to exclude any mention of the settlement at trial. *See* Tr. at 776 ("[W]e're not going to talk about the settlement. That's been, that's part of the Motion in Limine that I gra[n]ted."). Although several witnesses mentioned the settlement, its amount was not disclosed to the jury.

In their motion to correct error, the Lawyers argued—and the trial court apparently agreed—that Solnosky had admitted liability in the Clark County Action to "breach of fiduciary duty and unfair competition claims which the physician investors were alleged to have conspired with him to the detriment of OpenSided[,]" Appellants' App. at 78, and thus "Kentuckiana Diagnostics' settlement entitled Ron Solnosky to a set off of the Judgment in the underlying trial." *Id.* at 80. The Lawyers further argued that

[t]hough Susan Williams elected not to appeal the Clark Circuit Court's decision to deny set-off, Solnosky was clearly entitled to such credit on the underlying judgment. Therefore, [the Lawyers] are entitled to remittitur of the amount properly set off in the underlying action as there was no evidence presented at trial that any act or omission of [the

Lawyers] caused Susan Williams to neglect to challenge the underlying verdict to have it reduced to the properly set off amount.

*Id.*

■ Even assuming, without deciding, that Solnosky was entitled to a setoff of Kentuckiana Diagnostics' settlement in the Clark County Action based on their liability to OpenSided as co-conspirators, the fact remains that Solnosky's malpractice action against the Lawyers was governed by Indiana's Comparative Fault Act. *See* Tr. at 2003 (final instruction 21: "You must decide this case according to the Indiana law of comparative fault. . . . First, you must determine the percentage of fault, if any, of the Plaintiff and of the Defendants in the proximate causation of Plaintiff's injuries and damages."). As our supreme court explained in *Mendenhall v. Skinner & Broadbent Co.,*

> The Comparative Fault Act, Ind.Code § 34–51–2–1, applies generally to damages actions based in fault that accrued on or after January 1, 1985. The primary objective of the Act was to modify the common law rule of contributory negligence under which a plaintiff was barred from recovery where he was only slightly negligent. The Act seeks to achieve this result through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury.

> Under Indiana's comparative fault scheme, a named defendant may assert a "nonparty" defense, seeking to attribute fault to a nonparty rather than to

the defendant. Ind.Code Ann. § 34–51–2–14 (West Supp.1999). When a defendant asserts this defense, the court instructs the jury to determine the percentage of fault of each party and "any person who is a nonparty." Ind.Code Ann. § 34–51–2–7(b)(1) (West Supp. 1999). A nonparty is: "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." Ind.Code Ann. § 34–6–2–88 (West Supp.1999). A defendant must affirmatively plead the nonparty defense, and the defendant carries the burden of proof on the defense. Ind.Code Ann. § 34–51–2–15 (West Supp.1999).

728 N.E.2d 140, 142 (Ind.2000) (footnotes and some citations omitted).

Here, the Lawyers failed to plead and prove a nonparty defense against Williams, and thus they are not entitled to a reduction of the jury's verdict based on her alleged neglect in failing to obtain a setoff for Kentuckiana Diagnostics' settlement in the Clark County Action. The Lawyers' lengthy argument to the contrary is of no avail.[3] We conclude that the trial court abused its discretion in granting the Lawyers a setoff and therefore reverse as to this issue.

### III. Apportionment of Legal Fees

■ Next, Solnosky contends that the trial court abused its discretion in reducing the jury's verdict by apportioning Williams's fees for representing the Clients in the Clark County Action. We agree.

---

**3.** Among other things, the Lawyers argue that Goodwell was not a party to the Clark County Action, "could not control the terms of the various settlements, and could not control the final outcome." Appellee's Br. at 23. Be that as it may, the Lawyers could have controlled the final outcome of *this* case by naming Williams as a nonparty, but they failed to do so.

At trial, Williams testified regarding Plaintiff's Exhibit 31, which she described as a summary of the bills that her firm issued for what it would have cost to defend Solnosky in the Clark County Action, regardless of whether Gary Miller or Medical Marketing "were also defended simultaneously." Tr. at 1051. According to the exhibit, the net amount due was $612,214.72, or $863,260.81 including twelve percent interest, as of April 16, 2007. Williams testified that "the defense of one person can be just as expensive as the defense of three people when you're dealing with the exact same factual issues" and that the amount of work, such as attending depositions, "was the same whether [she] was defending one person or three people." *Id.* at 1060. She further testified that because Miller settled with OpenSided prior to the trial on damages in the Clark County Action, he would have incurred approximately $177,000 less in attorney's fees. *Id.* at 1064. Finally, she testified that the Clients were billed jointly. *Id.* at 1067.

The Lawyers' expert challenged $26,484.64 of Williams's bill as excessive on the basis that clerical time had been charged as paralegal time. Solnosky posits, and the Lawyers do not dispute, that the jury ultimately awarded Solnosky the full amount of Williams's bill plus interest. In response to the Lawyers' motion to correct error, the trial court determined that no engagement letter or contract for Williams's legal services had been admitted at trial, that all three Clients "received a benefit" from Williams's representation, and that therefore it was "appropriate to attribute an equally divided share" of the fees among all three Clients. Appellants' App. at 17. The trial court reduced the jury's verdict accordingly.

This was improper. Williams's uncontradicted testimony that the Clients were billed jointly is itself sufficient to support a finding that Solnosky is liable for the full amount of (and therefore entitled to damages for the full amount of) Williams's attorney's fees. *See* BLACK'S LAW DICTIONARY 933 (8th ed.2004) (defining "joint liability" as "liability shared by two or more parties"); *see also Thompson v. Wayne Smith Constr. Co.*, 640 N.E.2d 408, 414 (Ind.Ct.App.1994) (citing several authorities for proposition that "each joint debtor is responsible for the entire amount of the debt"). The issues of whether Solnosky may seek indemnification from the other Clients and whether the Lawyers may in turn seek indemnification from Solnosky are not before us today. Viewing the evidence most favorable to Solnosky, as we must, we conclude that the trial court abused its discretion in apportioning the Clients' legal fees and reverse as to this issue.

### IV. Law Firm's Counterclaim for Unpaid Fees

█ Finally, the Clients contend that the trial court erred in granting the Law Firm's motion for judgment on the evidence on its counterclaim for unpaid attorney's fees incurred in defending the Clients in the Clark County Action. The Lawyers claim that "in Indiana an attorney who renders services to a client and is thereafter sued for malpractice is entitled to a deduction in the malpractice award equal to the reasonable value of his or her services on a theory of quantum meruit." Appellees' Br. at 40 (citing *Schultheis v. Franke*, 658 N.E.2d 932, 941 (Ind.Ct.App. 1995), *trans. denied* (1996)).

Specifically, *Schultheis* holds that

an attorney who renders services for a client and is thereafter sued for malpractice is entitled to a deduction in the malpractice award equal to the reasonable value of his or her services on a theory of quantum meruit. This ap-

proach will avoid a windfall to the client where the attorney has provided services beneficial to the client. Conversely, a client will not be forced to pay twice for the same services because counsel in the legal malpractice action presumably will prove only those portions of the underlying case that were not already completed by the negligent attorney. Nor will the negligent attorney be rewarded for his or her shoddy workmanship as fees will be deducted only for legal services which actually benefited the client.

658 N.E.2d at 941.

The Clients point out that in this case, they would not have incurred any fees for the Law Firm's defense in the Clark County Action but for Goodwell's negligence. They further observe that Goodwell has never argued that she is not liable for attorney's fees incurred as a result of her negligence. Finally, they note that the trial court withheld entry of judgment on the Law Firm's counterclaim pending the jury's verdict. The jury found the Lawyers to be 100% at fault for Solnosky's damages; thus, if Solnosky had actually paid the fees at issue, he would be entitled to recover them in damages. In light of the foregoing, we conclude that the trial court erred in granting the Law Firm's motion for judgment on the evidence on its counterclaim. We reverse as to this issue and remand with instructions to reinstate the jury's verdict of $1,491,886 in favor of Solnosky.

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., and VAIDIK, J., concur.