CENTRAL INDIANA CARPENTERS
WELFARE FUND, Appellant
(Defendant Below),

v.

Nelson ELLIS, Appellee (Plaintiff
Below).

No. 2–780A210.

Court of Appeals of Indiana,
First District.

Nov. 26, 1980.

Lloyd L. DeWester, Jr., Indianapolis, for appellant.

Michael T. Conway, Indianapolis, for appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Defendant–appellant Central Indiana Carpenters Welfare Fund (the fund) appeals from the judgment of the Marion Superior Court Room No. 5 in favor of plaintiff–appellee Nelson Ellis in his suit for reimbursement for medical expenses under the fund's benefit plan. We affirm.

## STATEMENT OF THE FACTS

The evidence indicates that during the times pertinent to this case Ellis was a millwright and a member of Millwright Local 1003 in Marion County. As such, he and his eligible dependents were entitled under the Central Indiana Carpenters Welfare Fund Benefit Plan for certain sickness and medical expense benefits so long as he accumulated a certain number of hours of work over a given period of time. If he did not work the required number of hours, the plan provided that he could maintain his eligibility for a maximum of three consecutive three–month periods by making self–payments to the fund. Pursuant to these terms, Ellis made three consecutive self–payments and was thereby covered under the plan through April 1977. Ellis had received a booklet containing the terms of the plan. The plan booklet provided that it was the employee's responsibility to determine if it was necessary for him to make a self–payment.

Richard Stumph of Professional Administrators Limited, the eligibility administrator of the benefit plan, testified that in preparing a self–payment notice for a worker named E. Nelson, Stumph's office discovered that it did not have his address. Consequently, it contacted the Central Indiana Carpenters District Council, which provided an address to which Professional Administrators then sent the self–payment notice for the May through July quarter.

On about April 1, 1977, a fourth self–payment notice arrived through the mail at Ellis' home. Although the notice was sent to Ellis' home address, it was directed to "E NELSON" rather than to "N L ELLIS" as the previous three notices had been. Further, the notice bore a Social Security number different from that of Ellis.

David Blanford, Vice President of J. F. Malloy and Associates, Inc., the administrator of the benefit plan, testified that he had a conversation with Ellis in April 1977 concerning eligibility, although Ellis testified that he could not recall discussing his

eligibility for benefits prior to July of that year. Blanford also said that his office first learned that Ellis had received Nelson's self–payment notice in April 1977.[1]

Ellis testified that on about April 18, 1977, his wife, Helen, wrote and sent a check to pay the bill. He did not see the notice himself. It was customary for Helen to pay their bills. Ellis said that by making the payment, he expected to be covered by the plan and he relied upon the coverage.

Blanford stated that his office received the check and self–payment notice and that because it relies upon the name on the self–payment notice, it credited $125 to E. Nelson's account. He further testified that there is no requirement that the payment be made by the worker himself.

Helen Ellis had been covered as an eligible dependent for hospital and medical benefits. She incurred medical expenses during the May through July quarter and died in July 1977. In early July, Ellis learned that the medical bills would not be paid by the plan. Ellis then contacted Blanford's office to complain about the lack of coverage. A representative of Professional Administrators Limited wrote to Ellis on July 8, 1977, telling him that he was mistakenly sent Nelson's self–payment notice and that he would be receiving a refund of his payment. On October 31, 1977, his refund check was sent.

On April 11, 1978, Ellis filed suit against the fund, alleging, among other things, that the fund breached its insurance contract to provide medical expense benefits. On December 4, 1979, after a trial to the Marion Superior Court, Room No. 5, the court entered judgment in favor of Ellis on Count I of his complaint and awarded him $4,928.10 in damages.[2] The judgment was not accompanied by findings of fact. The fund

timely filed its motion to correct errors, which was overruled on April 3, 1980.

## STATEMENT OF THE ISSUES

The fund presents the following issues for our review:

(1) whether the trial court erred as a matter of law in its denial of the fund's motion to dismiss based upon Ellis' failure to exhaust his internal remedies prior to filing suit;

(2) whether the trial court erred as a matter of fact and law in finding for Ellis and against the fund on Count I of Ellis' complaint; and

(3) whether the trial court erred as a matter of fact and law in assessing $4,928.10 in damages against the fund on Count I.

## ISSUE ONE

The fund argues that its motion to dismiss Ellis' complaint was erroneously overruled by the trial court. It points to Ind. Code 22–7–2–1 and argues that this provision requires a member of a labor organization to exhaust all remedies provided by his organization before bringing an action at law or in equity. Because the fund's benefit plan for union members provides a three–step appeal procedure, which Ellis apparently did not pursue, the fund reasons that Ellis' complaint should have been dismissed for failure to exhaust his union remedies and for lack of subject–matter jurisdiction of the trial court.

Ellis contends, among other things, that IC 22–7–2–1 does not encompass insurance contract disputes.

Indiana Code 22–7–2–1 provides as follows:

"22–7–2–1 Contracts; rights and privileges; enforcement

---

1. Shortly after Blanford had made this last statement, counsel for Ellis interposed a hearsay objection which was sustained. However, counsel did not move to strike the testimony already given under this line of questioning. Neither did the trial court strike the testimony on its own motion. Where, in a bench trial, an objection to testimony is sustained but counsel does not move to strike objectionable testimo-

ny already given, the testimony is to be considered by the trial court and given as much weight as he or she deems appropriate. *Arnett v. Helvie*, (1971) 148 Ind.App. 476, 267 N.E.2d 864.

2. In Count I Ellis had prayed for damages in the amount of $5,204.10.

"Sec. 1. Duly adopted *constitutions, by–laws, and other laws of labor organizations*, except when and to the extent that the provisions thereof may violate public policy, *are hereby declared to be valid and enforceable contracts* as between the members and officers of such labor organizations; and *said contracts*, and all rights and privileges extended thereby and therein contained, *are hereby declared to be enforceable in the courts of this state*, by actions at law or in equity, brought by any individual member or members of such labor organization. *Provided*, however, *That such member or members of such labor organization shall exhaust all rights, privileges and remedies provided by the constitution, by–laws, or other laws* of said labor organization, before bringing any such action at law or in equity." (Our emphasis.)

The effect of the first clause of IC 22–7–2–1 is to render "constitutions, by–laws, and other laws of labor organizations" enforceable contracts. The second clause provides that "said contracts" are enforceable in the courts of Indiana. The proviso limits the second clause to situations where the member of the labor organization has already exhausted all of his "rights, privileges and remedies provided by the constitution, by–laws, or other laws of said labor organization . . . ."

■ It is readily apparent that the contracts which are made enforceable, subject to the condition precedent that all remedies provided by the laws of the labor organization be exhausted, are those which have been declared to be contracts in the first clause. The term, "said contracts," refers to the constitution, by–laws, and other laws of the labor organization and not to all contracts between the labor organization's members and officers.

The fund was established by a trust agreement among the Central and Western Indiana District Council of Carpenters United Brotherhood of Carpenters and Joiners of America, A.F. of L.–C.I.O., Construction League of Indianapolis, Inc., Labor Relation Division, Indiana Highway Constructors, Inc., and the employer and employee trustees of the fund. The fund's benefit plan pertains to eligible employees and their eligible dependents. Assuming, for the sake of argument, that contractual rights are created by the trust agreement and by the benefit plan, we still have not been directed to any evidence that the trust or the benefit plan constitutes a constitution, by–law, or other law of the labor organization. As we have already stated, IC 22–7–2–1 does not apply to every contract between the labor organization's members and officers.

■ Accordingly, we are constrained to hold that the fund has failed to show that IC 22–7–2–1 is applicable to the case at bar, and we need not further consider the fund's exhaustion of remedies and subject–matter jurisdiction arguments.

ISSUE TWO

The fund contends that this was a case of mutual mistake relating to a fact material to the insurance contract and that, consequently, there was no meeting of the minds and no contract.

■ As this Court has often said, we will not weigh the evidence or judge the credibility of witnesses. Rather, we will consider only that evidence most favorable to the judgment and all reasonable inferences drawn from that evidence. If there is evidence of probative value to support the trial court's judgment, we must affirm. *Census Federal Credit Union v. Wann*, (1980) Ind.App., 403 N.E.2d 348. Further, Ind. Rules of Procedure, Trial Rule 52(A), prohibits us from setting aside the judgment of the trial court in a suit tried without a jury unless that judgment is clearly erroneous. *Nelson v. Butcher*, (1976) 170 Ind.App. 101, 352 N.E.2d 106, (*transfer denied*).

One reasonably could conclude that the fund or its agent mistakenly sent the self–payment notice to Ellis in the belief that the notice was being sent to Nelson's address. Also, one could infer that Helen Ellis received the notice and, without exam-

ining it carefully, assumed it was intended for her husband and, consequently, paid the $125 requested by the notice. However, the case is further complicated by Blanford's testimony that he discussed the question of eligibility with Ellis in April 1977 and that his office first learned that Ellis had received Nelson's self–payment notice in April. Blanford's testimony gives rise to the inference that the fund had reason to know of the occurrence of the original mistake by each party as early as April 1977. Furthermore, Ellis testified that he expected to be covered for the period in question and relied upon that coverage.

The fund further contends that Count I was based upon a theory of express contract as memorialized in the Central Indiana Carpenters Welfare Fund Benefit Plan. By the terms of that contract, Ellis could not have been covered for more than three consecutive self–payment periods. The fund asserts that Ellis cannot recover under a theory of reliance or contract implied in law, because he had already pleaded an express contract and because his reliance could not have been reasonable inasmuch as the evidence indicates that Ellis knew that he could not maintain his coverage by making a fourth consecutive self–payment.

■ However, another principle which we must follow is that the judgment of the trial court must be affirmed if it can be sustained by any legal theory which is supported by the evidence. *Tarrant v. Self*, (1979) Ind.App., 387 N.E.2d 1349, *transfer denied*.

The inference that the fund had reason to know in April that Nelson's self–payment notice had been sent by mistake to Ellis and that Helen Ellis had mistakenly sent a check with Nelson's notice to the fund, coupled with the fund's retention of the payment until after claims for benefits had been made upon the fund, suggest to us a theory upon which the judgment may be affirmed: equitable estoppel. This theory has in the past been applied in insurance

cases,[3] although it is sometimes confused with waiver, as the Appellate Court noted in *Travelers Insurance Company v. Eviston*, (1941) 110 Ind.App. 143, 154, 37 N.E.2d 310:

"Technically, there is a distinction between 'waiver' and 'estoppel.' A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between 'estoppel' and 'implied waiver' is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably. The doctrines of 'waiver' and 'estoppel' extend to practically every ground upon which an insurer may deny liability."

The elements of estoppel were laid out in detail in *Emmco Insurance v. Pashas*, (1967) 140 Ind.App. 544, 551, 224 N.E.2d 314:

"To constitute an estoppel by conduct, there must be evidence of probative value establishing the following facts: (1) A representation or concealment of material facts; (2) The representation must have been made with knowledge of the facts; (3) The party to whom it was made must have been ignorant of the matter; (4) It must have been made with the intention that the other party should act upon it; (5) The other party must have been induced to act upon it."

■ We find that there was evidence from which the trial court reasonably could have concluded that the fund or its agent knew in April 1977 that Nelson and Helen Ellis believed that by paying the amount stated on the self–payment notice they could maintain Nelson Ellis' eligibility for benefits and that the fund concealed its knowledge of the mistakes from Ellis while retaining the self–payment, thus reinforcing Ellis' belief that he and his wife were

3. Although the fund technically is not an insurance company, we find that the relationship between the fund and Ellis is sufficiently analogous to that between an insurer and its insured to make a consideration of insurance law profitable in this case.

covered by the benefit plan. Accordingly, the fund is estopped from asserting, after Ellis has incurred medical expenses, that Ellis was not eligible for coverage in May through July 1977.

## ISSUE THREE

The fund maintains that the trial court erred in its assessment of damages. It argues that the benefit plan does not cover all medical expenses and that Ellis failed to prove which of the medical bills he introduced were compensable under the terms of the plan. The fund contends that the evidence was clear enough to establish only that Ellis incurred $457.16 in compensable medical expenses and that this Court should order that the damage award be modified to reflect that amount.

■ The general rule with regard to hospitalization insurance appears to be that the insured has the burden of proving the amount he spent or became obligated for on account of hospital expenses. 21 J. A. Appleman and J. Appleman, *Insurance Law and Practice* § 12189, at 223 (1980). However, where the insurer seeks to avoid liability under a limitation, an exception, or an exclusionary clause in a health or accident policy, the insurer is generally said to have the burden of proving facts establishing the applicability of the limiting provision. *See, Mutual Hospital Insurance, Inc. v. Klapper,* (1972) 153 Ind.App. 555, 288 N.E.2d 279, *transfer denied* (1974) 262 Ind. 144, 312 N.E.2d 482; *Southards v. Central Plains Insurance Company,* (1968) 201 Kan. 499, 441 P.2d 808; *Miller v. Industrial Hospital Association,* (1969) 183 Neb. 704, 163 N.W.2d 891; *Daniel v. Allstate Life Insurance Company,* (1979) 71 App.Div.2d 872, 419 N.Y.S.2d 662; *International Security Life Insurance Company v. Rosson,* (1971) Tex.Civ.App., 466 S.W.2d 52.

Ellis identified the various bills and receipts introduced into evidence as representing medical expenses incurred during the period of May through July 1977 by reason of his wife's fatal illness. In cross–examining Ellis, counsel for the fund brought out the fact that the bills and receipts introduced into evidence represented 100% of the medical expenses incurred and did not take into account maxima for benefits or coinsurance percentages for certain kinds of medical expenses. However, the fund did not establish at trial how much of the total expenses of $5,204.10 would be excluded from coverage by limiting provisions in the benefit plan. There was no evidence that Ellis had participated in negotiating the terms of the plan. Consequently, the fund and its agents, with their expertise in administering the plan, were in a better position to specify what portion of Ellis' claim was not covered by the plan and had the burden of proof on that question.

■ We hold that the trial court reasonably could have concluded that Ellis carried his burden of proof but that the fund did not carry its burden of proof. Accordingly, the fund has demonstrated no reversible error in the trial court's assessment of damages.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.