**BABSON BROS. CO., Appellant (Defendant Below),**

v.

**TIPSTAR CORPORATION, Appellee (Plaintiff Below).**

**No. 4-282A34.**

Court of Appeals of Indiana, First District.

March 7, 1983.

Rehearing Denied April 12, 1983.

Christopher Kirages, Charles T. Jennings, Gary P. Price, Dutton, Kappes & Overman, Indianapolis, for appellant.

John P. Price, Jon D. Krahulik, Marshall S. Hanley, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Babson Bros. Co. (Babson) appeals the jury verdict of $581,200.00 plus costs rendered in favor of Tipstar Corporation (Tipstar). Tipstar maintained a dairy operation and recovered damages for the negligent installation of a milking parlor that Babson sold Tipstar.[1]

We affirm.

The Babson milking parlor was installed on Tipstar's farm on June 10, 1975. Leon Tippin (Tippin), the president of Tipstar, was told that the Babson device would increase production of the cattle by 1000 to 2000 pounds of milk per year per cow. He was also told that the parlor could be operated by one person.

Tippin complained to Babson that he had not received proper training to operate the parlor. Babson sent a field engineer to the Tipstar farm in October, 1975, who analyzed that the "prep stall" which automatically washed the cows' udders prior to milking was spraying cold water rather than warm water. The engineer also concluded that the voltage and vacuum settings on the milkers were improperly set. The engineer returned in November, 1975, and found that the vacuum settings were im-

---

1. Counsel for each side are to be complimented for an outstanding presentation of their case, both in the briefs and oral argument.

**14**

properly set again. After repairing the vacuum, the engineer instructed Tipstar's personnel on the proper operation of the equipment.

Tipstar continued to encounter problems with its milking operation, including very high bacteria counts and mastitis. In January, 1976, automatic randels were delivered and installed on the Tipstar operation. In exchange for the randels, Tipstar executed a release. Tipstar continued to experience difficulty in its milking operations.

Tipstar attempted many solutions to correct its difficulties, including the addition of three herds which Tipstar purchased. Although production with the new herds initially improved, production again began to dwindle in early 1978. Outside experts were utilized. An inspector for the State Board of Health concluded that the problem was with the herds and not the parlor. Tipstar also employed feed specialists who changed its feeding program, but this had no effect. In April, 1978, Tipstar consulted a veterinarian and a feed expert, both from Purdue, as well as employees from Babson. The veterinarian concluded that there was no evidence the animals were being injured by the equipment in the parlor.

In March, 1979, an electrician discovered stray voltage within the parlor and properly grounded the parlor. Babson's agent, who had examined the parlor many times, testified that he had presumed that the parlor had been grounded. The record also revealed that ten different employees of Babson had visited the Tipstar Dairy and attempted to assist it prior to the proper grounding of the parlor.

Babson argues on appeal that the trial court erred by denying its motion for summary judgment and its motion for a judgment on the evidence, which both contend that Tipstar's claim was barred by the statute of limitations. Babson also alleges the trial court erred by permitting the jury to consider evidence of Tipstar's economic losses; by allowing testimony concerning Tipstar's lost profits; by denying Babson's motions for summary judgment and judgment on the evidence based upon the Tipstar's

signing of the release in January, 1976; by denying Babson's motion for a judgment notwithstanding the verdict because it alleges that Tipstar was contributorily negligent as a matter of law; and that the trial court erred in giving an instruction regarding proximate cause.

■ Babson argues that the trial court erred by denying its motions for summary judgment and judgment on the evidence because it alleges that Tipstar commenced this action beyond the statute of limitations. The statute of limitations for injuries to personal property is contained in Ind.Code 34–1–2–2, which requires the action be commenced within two years. Our statute is an accrual statute, such that a cause of action accrues at the time injury is produced by wrongful acts for which the law allows damages susceptible of ascertainment. The statute of limitations begins to run at the time a complete cause of action accrues or arises or when a person becomes liable to an action. *Scates v. State,* (1978) 178 Ind.App. 624, 383 N.E.2d 491.

Tipstar filed its complaint on June 4, 1979. Babson argues that the action was well beyond the two year limitation because Tipstar encountered problems with the milking parlor shortly after installation and certainly was aware of the problems by January, 1976, because Tippin's testimony characterized the operation as being "in chaos".

The trial court submitted this issue to the jury and the propriety of this action or instructions regarding this issue have not been challenged. Moreover, the question of when a cause of action accrues usually requires a determination by the factfinder. See, *Montgomery v. Crum,* (1928) 199 Ind. 660, 161 N.E. 251, *Rees v. Heyser,* (1980) Ind.App., 404 N.E.2d 1183.

■ The evidence established that Tipstar encountered problems with the milking parlor shortly after installation, but the jury was presented with evidence that the first time Tipstar could have reasonably ascertained that Babson was negligent was

in March, 1979, when the lack of proper grounding was determined to be the source of the problem. Babson correctly points out that damages need not be fully ascertainable to start the statute of limitations running. *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281. However, the evidence established that experts, provided by Babson and Tipstar, could not determine the nature of the problem and suggested a number of ineffective solutions which were extrinsic to the milking parlor operations. The statute of limitations begins to run at the time when a complete cause of action accrues or arises or when a person becomes liable to an action, *Scates v. State, supra.* We cannot conclude as a matter of law that the jury erred in making its factual determination.

The second issue that Babson raises on appeal is whether the trial court erred by permitting the jury to consider Tipstar's evidence of economic losses. Babson alleges that the jury could not have considered the express warranties it gave Tipstar or Tipstar's potential benefit of the bargain because this case was tried on the theory of tort liability.[2] Babson also alleges the trial court erred in giving an instruction regarding damages.

■ This court agrees with the general proposition forwarded by Babson that contractual damages, such as the reliance interest or benefit of the bargain, are generally not recoverable in a tort action. *See, Moorman Mfg. Co. v. National Tank Co.,* (1982) 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443. Tipstar conceded this point during oral argument, but argues that the jury's award was well within the scope of consequential damages.

■ A plaintiff in a negligence action is entitled to damages for the injuries proximately caused by the breach of the defendant's duty. *Rondinelli v. Bowden,* (1973) 155 Ind.App. 582, 293 N.E.2d 812. However, Indiana recognizes recovery of lost profits in a tort action. *See, Indiana Bell*

*Co., Inc. v. O'Bryan,* (1980) Ind.App., 408 N.E.2d 178, *Kroger Co. v. Haun,* (1978) 177 Ind.App. 403, 379 N.E.2d 1004. Babson conceded during oral argument that an economic loss can be characterized as a consequential damages in certain situations.

■ While we agree with Babson's proposition that Tipstar would not be entitled to recover damages based upon the express warranties that Babson made, we must nevertheless uphold the jury's verdict because there is sufficient evidence to support the amount as a measure of compensatory damages. Tipstar presented evidence demonstrating its loss of profits due to Babson's negligent installation of the milking parlor. In reviewing an award for damages, this tribunal will not disturb the award unless it is not within the scope of the evidence, or unless it appears that the award was motivated by prejudice, passion, pride, or partiality, or the consideration of some improper element. There is no requirement of any particular degree of mathematical certainty in assessing damages, and where there is any doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Friendship Farms Camps, Inc. v. Parson,* (1977) 172 Ind.App. 73, 359 N.E.2d 280.

■ Babson alleges the trial court erred in giving an instruction which included items of a commercial loss and therefore, argues it should not have been submitted in a negligence claim. Babson's objections at trial were that the instruction permitted the jury to speculate as to the lost income element of the instruction, and that there was a lack of evidence to support the elements of the fair market value of the cattle and the increased cost of operating the parlor. Any error regarding an instruction is waived where the grounds asserted on appeal differ from those grounds stated in the objections of trial. *Dominguez v. Gallmeyer,* (1980) Ind.App., 402 N.E.2d 1295. Any error with the instruction is waived.

**2.** Tipstar brought this action on the theories of contract, tort, and strict liability. The contract

and strict liability claims were dismissed.

Babson also alleges that the trial court erred by allowing the Dairy Herd Improvement Association (DHIA) rolling herd average into evidence. The rolling herd average is a statistical calculation designed to establish a mathematical standard for production quantity at given time intervals. Babson's expert witness testified that it is a reliable tool to the dairy industry. Babson's specific allegation is that Tipstar's average for January, 1977, was based on calculations based on the herd averages from June, 1974, until June, 1980, and thus, included some mathematical factors reflecting Tipstar's future profits.

■■ A trial court has considerable latitude in the admission or rejection of evidence. *Posey County v. Chamness,* (1982) Ind.App., 438 N.E.2d 1041. In the present case, we remain unpersuaded that the trial court erred in admitting this evidence because Tipstar's expert made reference to potential increased production of the dairy operation due to Babson's warranty. Babson objected and the trial court sustained the objection and admonished the jury to disregard any reference to the supposed increase in production. An admonition is presumed to cure error, unless the contrary is shown. *Brown v. State,* (1981) Ind., 417 N.E.2d 333. Babson also presented an expert witness who also testified about the rolling herd average. We believe that Babson's argument is attacking the weight of this evidence. Our standards of review preclude reweighing of the evidence. *Central Indiana Carpenters Welfare v. Ellis,* (1981) Ind.App., 412 N.E.2d 865.

Babson argues that the trial court erred in permitting Tippin to testify concerning the cull record of his cattle. Babson objected to this testimony on the grounds that it violated the best evidence rule, in that the report itself was the "best evidence" of its probative value. The trial court overruled the objection and Babson now appeals.

■ The best evidence rule applies with respect to proof of ownership only when the issue of title or ownership is involved. *State v. Vaughan,* (1962) 243 Ind. 221, 184 N.E.2d 143. In the present case,

the terms of the cull report were not at issue and the trial court properly overruled Babson's objection.

■ The next issue argued by Babson concerns the denial of its motions for summary judgment and for judgment on the evidence based upon a release signed by Tipstar in January after the milking parlor had been installed. Babson had made adjustments on the milking parlor equipment and installed additional equipment with the expectation of solving the problems that existed. At the conclusion of this work, Tipstar signed a release which reads:

> With the completion of the installation of the automatic randels and the training of the dairy's personnel on the use of this automated equipment and procedure for proper cow milking, I, Leon Tippin accept all future responsibility for training, operation and maintenance of my Class III Parlor Installation. Also, any past claims shall be null and void.

The essence of Babson's argument is that the release is clear and unambiguous on its face and that it was error to allow testimony relating to the party's intent. Stated differently, absent ambiguity, the construction of the release is a matter of law to be determined by the court. *Piskorowski v. Shell Oil Co.,* (1980) Ind.App., 403 N.E.2d 838. As a matter of law, we are of the opinion that the release is not clear and unambiguous as it relates to claims arising subsequent to its signing.

■ Interpretation of a release, like any other contract, is determined by the terms of the particular instrument, considered in light of all the facts and circumstances. 66 Am.Jur.2d *Release* § 30 (1973). While the release under question in this appeal is explicit as to past claims, it is silent about claims arising in the future. In the absence of clear language pertaining to future claims, we cannot say, as a matter of law, that error existed in the trial court allowing the matter to go to the jury.

■ Babson also faults the instruction given about the release. It reads:

A release is a type of contract which operates to discharge an existing claim. Claims which had not matured or were not known to the parties when the release was executed are not discharged by a release.

Babson's argument hinges on the previously discussed proposition that it was error to let the release question go to the jury. Having decided that it was not error to give the jury this issue, we see no error in the instruction as given.

Babson's next issue argues that Tipstar was contributorily negligent as a matter of law because the milking parlor was not maintained as it should have been. The factual basis for this assertion is founded upon testimony which stated, among other things, that Tipstar did not utilize a dealer maintenance program, that Tipstar did not adhere to a recommended maintenance program and only fixed things as required, and that there was no bi-annual inspection. Babson's position is that this evidence demonstrated Tipstar's contributory negligence as a matter of law; therefore, there should be no recovery.

The general rule is that contributory negligence is a question of fact for the jury to determine. Where the facts are undisputed and only a single inference can be drawn therefrom does the question become one of law. *Stallings v. Dick,* (1965) 139 Ind.App. 118, 210 N.E.2d 82. The evidence pointing towards contributory negligence is not as clear cut as Babson would have us believe. As Tipstar argues, the source of the negligence was connected to a latent or hidden defect which was not detected by Babson's employees after extensive servicing, inspection, and testing. The question was one for the jury as to whether the failure to maintain constituted contributory negligence.

Babson's final issue concerns error in the giving of the instruction tendered by Tipstar on the subject of proximate cause. It is contended that the instruction is fatally flawed because it omits the element of foreseeability. We conclude that this issue is waived for the primary reason that Bab-

son's objection to the instruction was based on reasons other than that argued in the brief. *English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, *Hook v. Dorsam,* (1964) 135 Ind.App. 626, 196 N.E.2d 416.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.