

**FILED**

Dec 10 2020, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

B.J. Brinkerhoff
Alexandra Blackwell
Jeselskis Brinkerhoff Joseph, LLC
Indianapolis, Indiana

John P. Higgins
Katz Korin Cunningham PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
GREEK'S MOBILE RESPONSE
TEAM, LLC

Kristin Szczerbik
Szczerbik Law
Cloverdale, Indiana

ATTORNEYS FOR APPELLEES
JOSHUA TRISLER; CHARLES
KOEPPEN; ROLLING IN DOUGH
GP1, LLC; GREG ABES; ABES
RESTAURANT GROUP, LLC;
GREEK'S BINFORD, LLC; GREEK'S
PURDUE, LLC; TBK, LLC; AND
DEAN TRAPP

Aaron D. Grant
Taylor L. Fontan
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David McLean, individually and derivatively on behalf of Greek's Mobile Response Team, LLC, <br><br> *Appellant/Cross-Appellee/Plaintiff,* <br><br> v. | December 10, 2020 <br><br> Court of Appeals Case No. 19A-PL-417 <br><br> Appeal from the Hamilton Superior Court <br><br> The Hon. William P. Greenaway, Special Judge |

Joshua Trisler; Charles Koeppen; Greek's Mobile Response Team, LLC; Rolling in Dough GP1, LLC; Greg Abes; Abes Restaurant Group, LLC; Greek's Binford, LLC; Greek's Purdue, LLC; TBK, LLC; and Dean Trapp,

*Appellees/Cross-Appellants/Defendants.*

The Hon. David Najjar, Special Judge

Trial Court Cause No. 29D04-1611-PL-9753

**Bradford, Chief Judge.**

# Case Summary[1]

In 2014, David McLean joined Joshua Trisler and David Koeppen as members of Greek's Mobile Response Team, LLC ("GMRT"), which owned and operated a Greek's Pizzeria franchise in The Village of West Clay in Hamilton County ("Greek's West Clay"). Later that year, Koeppen's interest in GMRT was divided *pro rata* between McLean and Trisler, giving McLean at least a fifty-percent share. In November of 2014, Trisler sought to acquire a Greek's Pizzeria franchise in Carmel ("Greek's Carmel"), then operated by Rolling in Dough GP1, LLC ("Rolling in Dough"), with GMRT assets. Trisler applied $41,000.00 in GMRT funds to the purchase and capitalization of Greek's Carmel. In January of 2015, Koeppen personally executed a promissory note

[1] Oral argument was held in this case on November 17, 2020. We thank counsel for their preparation and presentations.

and subsequently applied $4000.00 in GMRT funds to his loan. At some point, McLean became concerned about Trisler's and Koeppen's activities and unsuccessfully attempted to review the books and records of GMRT. In September of 2016, Trisler entered into an agreement to convey all of the assets of GMRT to a buyer. In October of 2016, Koeppen (despite supposedly no longer having any interest in GMRT) and Trisler approved the sale, over McLean's objection.

[2] In November of 2016, McLean, in his individual capacity and on behalf of GMRT, filed suit against Trisler, Koeppen, GMRT, Rolling in Dough, and several other defendants (collectively, "Defendants"), making several claims for which he sought both money damages and injunctive relief. McLean eventually learned of an operating agreement for GMRT through a third party, which provided that GMRT members must unanimously agree to sell GMRT or Greek's West Clay. Meanwhile, Defendants (particularly Trisler, Koeppen, and Rolling in Dough) who were served with discovery requests were generally non-compliant with them, and, in May of 2017, the trial court entered judgment of liability against all Defendants as to all claims as a discovery sanction and set the matter for a damages hearing. In June of 2017, the trial court granted McLean's motion for further sanctions against Defendants for damages-discovery violations, ruling that Defendants were prevented from producing evidence at the damages hearing and awarding McLean attorney's fees. This award of attorney's fees was not, however, reduced to a judgment. The damages hearing began in September of 2017 and concluded in January of

2019, after which the trial court granted Defendants' motion for involuntary dismissal as to all claims against all Defendants on the basis that McLean had failed to sufficiently prove his actual damages.

[3] McLean contends that the trial court erred in concluding that he failed to establish damages, erred in dismissing his non-monetary claims, abused its discretion in denying his motion to disqualify GMRT's counsel, and erred in failing to award him attorney's fees incurred in attempting to secure discovery from Defendants. The Trisler Parties cross-appeal, claiming that McLean failed to establish that he was entitled to pursue claims in his individual capacity and abandoned his claims against most Defendants at the damages hearing. We agree with McLean that the trial court erred in concluding that he failed to establish damages and in failing to award him attorney's fees as a sanction for Defendants' discovery violations. We reject, however, the Trisler Parties' arguments that McLean was unable to bring claims in his own name and abandoned all of his derivative claims but agree that McLean has abandoned all claims against all Defendants except Trisler, Koeppen, and Rolling in Dough. We reverse the judgment of the trial court and remand for the entry of judgment in favor of McLean on various claims; the award of attorney's fees incurred in attempting to secure the Defendants' compliance with discovery orders; and a hearing, if applicable, on an award of exemplary damages and other fees and expenses pursuant to Indiana Code section 34-24-3-1, also known as the Indiana Crime Victims Relief Act ("CVRA").

# Facts and Procedural History

[4] In 2014, Trisler and Koeppen started GMRT, which owned and operated Greek's West Clay. That year, GMRT, acting through Trisler and Koeppen, agreed to sell McLean a thirty-percent share of GMRT for $90,000.00. As of July 1, 2014, McLean owned thirty percent of GMRT, Koeppen owned forty-five percent, and Trisler owned twenty-five percent. None of the three members of GMRT executed an operating agreement contemporaneously with the transfer of equity to McLean and, at the time, McLean was unaware that any operating agreement for GMRT had ever been implemented. At some point later in 2014, Koeppen's interest in GMRT was divided *pro rata* between McLean and Trisler, which, given McLean's larger share of equity before the redistribution, should have left him with a greater than fifty-percent share. That said, GMRT's tax returns for 2014, 2015, and 2016 reflected that McLean had a fifty-percent interest.

[5] At some point, Trisler sought to acquire Greek's Carmel, then operated by Rolling in Dough, of which he was already a part owner. On approximately November 12, 2014, Trisler, in his individual capacity, entered into a purchase agreement to acquire the Greek's Carmel location partially using GMRT funds. Pursuant to that purchase agreement, Trisler paid $74,500.00 to Rolling in Dough for all other membership interests of Greek's Carmel. The Greek's Carmel purchase agreement further provided that Trisler would pay the $74,500.00 purchase price with $34,500.00 in cash and by executing a promissory note for $40,000.00. Although Trisler was the sole purchaser of Greek's Carmel, he withdrew a total of $41,000.00 in GMRT funds to finance

the purchase. Meanwhile, on or around January 15, 2014, Koeppen had executed a promissory note in favor of Treetops, LLC, in an amount between $30,000.00 and $35,000.00. Although this promissory note was a personal obligation of Koeppen, he used $4000.00 in GMRT funds to make payments on his loan.

[6] At some point, McLean became concerned about Trisler's and Koeppen's activities and attempted to execute his statutory rights to review the books and records of GMRT to verify the company's revenue, income, expenses, and profits. To that end, on July 27, 2016, McLean sent Trisler an email requesting access to the corporate records of GMRT, including bank accounts, payroll information, credit cards, loans, corporate books and records, and corporate minutes. Trisler did not comply with this request, and, on August 2, 2016, indicated in an email that there was no operating agreement in place. At some point, however, Trisler, Koeppen, and/or somebody working on their behalf provided McLean with a document purporting to be an operating agreement for GMRT which bore McLean's forged signature ("the Forged Agreement").

[7] On September 26, 2016, Trisler entered into an agreement with Abes Restaurant Group, LLC ("ARG") purporting to convey all of the assets of GMRT to ARG. The September 26, 2016, agreement contained a provision making it contingent upon the affirmative vote of a majority of the members of GMRT. On October 2, 2016, Trisler and Koeppen (even though he supposedly no longer had any equity in GMRT) voted to ratify the sale of GMRT's assets to ARG, with McLean opposed. On October 18, 2016, McLean sent GMRT

another notice pursuant to Indiana Code section 23-18-4-8 demanding access to the corporate records of GMRT, along with a request that GMRT take immediate action against Trisler and Koeppen for "their wide-ranging misconduct[.]" Appellant's App. Vol. II p. 76.

[8] On November 18, 2016, McLean, in his individual capacity and on behalf of GMRT, filed suit against Trisler, Koeppen, GMRT, Rolling in Dough, Greg Abes, ARG, and others. McLean's complaint contained the following relevant claims:

   a) derivative claims (on behalf of GMRT) of breach of fiduciary duty, waste, self-dealing, misuse and misappropriation of corporate assets, theft, and conversion, against Trisler and Koeppen (money damages, injunction);

   b) direct and derivative claims of forgery and counterfeiting against Trisler and Koeppen (money damages);

   c) a direct claim of breach of fiduciary duty against Trisler and Koeppen (money damages);

   d) a direct claim for fraud against Trisler (money damages);

   e) a direct and derivative request for an accounting against Trisler and Koeppen (injunction);

   f) a direct and derivative request for access to corporate records against Trisler, Koeppen, and Rolling in Dough (injunction);

   g) a direct claim against Rolling in Dough for declaration of ownership rights (declaration of rights); and

   h) a direct claim of unjust enrichment against Trisler, Koeppen, and Rolling in Dough (money damages).

The same counsel appeared for all of Defendants except GMRT (collectively, "the Trisler Parties"), while GMRT, as nominal defendant, was initially unrepresented.

[9] On November 30, 2016, McLean sent non-party requests for production to GMRT's bank (PNC Bank) and its CPA (Florence Teskey). After the trial court denied the Trisler Parties' motion to quash the non-party request for production, PNC Bank and Teskey complied with the trial court's order and both produced an operating agreement for GMRT, executed by Koeppen and Trisler on May 14, 2014, which provided, in part, as follows: "Any offer to buy the Company or its business shall be referred to the Members for evaluation. The Members must agree unanimously in order to sell the Company or its business." Appellant's App. Vol. IV p. 56.

[10] Meanwhile, on January 3 and 4, 2017, McLean served various discovery-related requests, which included interrogatories, requests for production, and requests for admissions on Koeppen and Trisler and interrogatories and requests for production on Rolling in Dough. Koeppen's response to interrogatories simply omitted Interrogatory No. 9. As for Trisler, he did not respond to Interrogatory No. 13 as served, modifying it and responding to the modified interrogatory. Rolling in Dough also modified Interrogatory No. 9 and responded to the modified interrogatory.

[11] On April 7, 2017, McLean moved for sanctions for misconduct by the Trisler Parties, namely, producing the Forged Agreement, modifying and/or failing to respond to interrogatories, failing to produce relevant documents in their

possession, and making false representations to opposing counsel and the trial court. On April 21 and May 5, 2017, the Trisler Parties moved for two extensions of time within which to respond to McLean's motion for sanctions, both of which were granted. The trial court's May 5, 2017, order stated that the second extension was to be the final extension granted. On May 11, 2017, the trial court denied the Trisler Parties' third motion for an extension, entered final judgment as to liability against all of the Defendants as a sanction for violations of discovery orders, and set a damages hearing for July 12, 2017. On June 12, 2017, the Trisler Parties filed a motion to correct error, which the trial court denied on July 13, 2017.

[12] Meanwhile, on May 19, 2017, McLean filed a motion to compel the Defendants to respond to damages-discovery requests, which motion the trial court granted the same day. On June 14, 2017, the trial court granted McLean's motion to impose further sanctions on the Defendants for failing to comply with its order compelling them to respond to damages-discovery requests, barred the Defendants from presenting evidence at the damages hearing, and granted McLean costs and attorney's fees incurred in attempting to secure discovery responses. On June 29, 2017, the trial court granted McLean's motion to continue the damages hearing to September 20, 2017. On July 3, 2017, McLean requested an award of $21,193.84 in costs and attorney's fees pursuant to the trial court's June 15 grant of sanctions, which request has yet to be explicitly granted.

[13]     The damages hearing began on September 20, 2017. McLean testified at the hearing that at some point in 2014, Koeppen's forty-five-percent interest in GMRT had been divided *pro rata* between himself and Trisler, which would have left McLean with at least a fifty-percent share. McLean testified that he had become concerned about certain withdrawals from GMRT's account in July of 2016, when he discovered over 200 "questionable" withdrawals amounting to approximately $366,000.00. Tr. Vol. II p. 140. McLean indicated that Greek's West Clay was sold to ARG on October 2, 2016, for $350,000.00 over his objection. McLean testified that he had yet to receive any of the proceeds of the sale of Greek's West Clay.

[14]     On September 21, 2017, attorney Kristin Szczerbik appeared on behalf of GMRT. *Id.* The damages hearing resumed on February 7, 2018. McLean objected to Szczerbik's appearance on behalf of GMRT because she was allegedly hired by Trisler and Koeppen, GMRT lacked the authority to hire her, and she was attempting to argue that her client should not receive any damages from the wrongdoers. The trial court instructed McLean to file a motion to disqualify, and he did so on February 14, 2018. The trial court denied McLean's motion to disqualify counsel for GMRT on June 7, 2018.

[15]     The damages hearing resumed on July 18, 2018. The Trisler Parties' counsel indicated, without contradiction, that the only defendants "still at issue" were Trisler, Koeppen, and Rolling in Dough. Tr. Vol. III p. 94. On November 7, 2018, the Trisler Parties filed their second motion to correct error and request for interlocutory appeal in which they again argued that they should be released

from the prior default judgment. The trial court denied the Trisler Parties'
second motion to correct error and their request for certification for
interlocutory appeal on December 17, 2018.

[16] After approximately a year and half, the damages hearing concluded on
January 23, 2019, at the end of which the Defendants moved for involuntary
dismissal. The trial court granted the Defendants' motion to dismiss all claims
against all Defendants. The trial court's order provides as follows:

> Plaintiff, David McLean appeared in person and by counsel Paul
> J. Higgins and B.J. Brinkerhoff. Defendants, Joshua Trisler and
> Charles Koeppen appeared in person and by counsel P. Adam
> Davis. [GMRT] appeared by counsel Kristin Szczerbik. All other
> Defendants appeared by counsel P. Adam Davis. Witnesses
> having been sworn and evidence having been heard and the Court
> being duly advised now finds and Orders as follows:
>
> 1. The Court entered a default judgment against the various
>    Defendants and the matter was tried exclusively on the
>    issue of damages.
>
> 3.[2] Although liability had been established, Plaintiff still had to
>    prove the actual damages to which he contends he is
>    entitled. The burden of proof that is required is a
>    preponderance of the evidence. Unless called by the
>    opposing party, Defendants are under no obligation to
>    present anything at trial.
>
> 4. It was established that the business sold for $350,00[0].00.
>    This was gross sale proceeds from the sale. It simply was
>    not proven that Defendants had either received this sum in
>    whole or whether it was being paid in installments pursuant

---

2 There is no paragraph "2" in the trial court's order.

to a promissory note and if so what the terms of the note were. The Court cannot speculate on the issues of intercompany loans, debts and liabilities and therefore ultimately the net proceeds. The Court simply cannot speculate what the appropriate amount of damages might be. The Court could not make a ruling in which it had the required confidence.

5. At the conclusion of Plaintiff's case-in-chief, Defendants moved for involuntary dismissal pursuant to Indiana Rule of Trial Procedure 41(B). The Court granted that motion.

IT IS THEREFORE ORDERED that Plaintiff's complaint is dismissed pursuant to Indiana Rule of Trial Procedure 41(B). All prior Orders issued in this case are now held for naught.

January 24, 2019, Order pp. 1–3.

McLean filed his Notice of Appeal on February 22, 2019. By order dated March 22, 2019, we stayed the appeal pursuant to Appellate Rule 37 so that the trial court could conduct further evidentiary hearings on the Defendants' motions for attorney fees, costs, and expenses and for costs and expenses for an allegedly wrongful enjoinment of Rolling in Dough that had occurred earlier in the case. The case was remanded, and the trial court held a hearing on April 24, 2019. On April 26, 2019, the trial court denied all of Defendants' outstanding motions.

# Discussion and Decision

## *Cross-Appeal Issues*

## I. The Trisler Parties' Cross-Appeal Arguments

The Trisler Parties make several arguments on cross-appeal that, if one or all are found to have merit, would reduce the number of McLean's claims we must

further consider in this appeal and/or reduce the number of Defendants. Consequently, we address these cross-appeal arguments before moving to McLean's direct appeal issues. The Trisler Parties claim that McLean abandoned all derivative claims and all claims against most Defendants at the damages hearing. The Trisler Parties also argue that McLean never established that he could bring any claims in his own name against any Defendant, therefore limiting him to bringing derivative claims on behalf of GMRT.

## A. Abandonment of Derivative Claims

[19] The Trisler Parties contend that McLean abandoned his derivative claims, pointing to the following comments from McLean's counsel made during the damages hearing:

> [McLean's counsel]: There are two pockets of damages that our client is pursuing. One are damages directly out of his pocket. The second are damages that he is seeking on behalf of GMRT since GMRT elected not to participate in the lawsuit.
>
> [The Trisler Parties' counsel]: What?
>
> [McLean's counsel]: We can, at this point in time, put a pin in those derivative damages. We would ask that the Court entertain evidence and argument for the remainder of the day on direct damages, issue an order based on that evidence, a final and appealable order on his direct damages, and we can figure out the rest of it some other time.

Tr. Vol. III p. 149. We believe that it is not a fair characterization to say that the above was an abandonment of all of McLean's derivative claims. For one thing, McLean's counsel never explicitly said that he was abandoning his derivative claims, on which, after all, judgment of liability had already been

entered. Instead, McLean's counsel indicated that "we can figure out rest of it [*i.e.*, the derivative damages] some other time." Tr. Vol. III p. 149. We conclude that McLean did not abandon his derivative claims at the damages hearing.

## B. Abandonment of Claims Against All Defendants Except Trisler, Koeppen, and Rolling in Dough

[20] The Trisler Parties contend that McLean abandoned all claims against all Defendants except Trisler, Koeppen, and Rolling in Dough. We agree. As mentioned, counsel for the Trisler Parties stated at the damages hearing that "the only defendants, I think, that are still at issue are Mr. Trisler, Mr. Koeppen, Rolling in Dough, and I believe that's it." Tr. Vol. III p. 94. This statement was not contested by McLean, indicating that relief was only still being sought from Trisler, Koeppen, and Rolling in Dough. This means that we do not need to further evaluate any claims against GMRT, Abes, ARG, Greek's Binford, Greek's Purdue, TBK, or Trapp. We shall, however, continue to refer to this reduced class of defendants consisting of Trisler, Koeppen, and Rolling in Dough as the Trisler Parties.[3]

## C. Direct Claims

[21] The Trisler Parties contend that McLean has never established that he can bring direct claims against them, while McLean contends that he has established that

---

[3] Because we conclude that McLean has abandoned all claims against GMRT, we need not address its claim that the trial court erred in entering default judgment against it as nominal defendant or McLean's claim that the trial court abused its discretion in allowing counsel to appear for GMRT below.

he may, in fact, proceed in his own name. "[T]he well-established general rule is that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation even if the value of their stock is impaired as a result of the injury." *Barth v. Barth*, 659 N.E.2d 559, 560–61 (Ind. 1995) ("*Barth II*") (citations omitted).

> The rationale supporting this rule is based on sound public policy considerations. It is recognized that authorization of shareholder actions in such cases would constitute authorization of multitudinous litigation and disregard for the corporate entity. Sound policy considerations have been said to require that a single action be brought rather than to permit separate suits by each shareholder even when the corporation and the shareholder are the same.

*Moll v. N. Cent. Solar Sys., Inc.*, 419 N.E.2d 154, 161 (Ind. Ct. App. 1981) (citations omitted), *disapproved of on other grounds by Enservco, Inc. v. Ind. Sec. Div.*, 623 N.E.2d 416, 421 (Ind. 1993). In *W & W Equip. Co., Inc. v. Mink*, 568 N.E.2d 564, 571 (Ind. Ct. App. 1991), *trans. denied*, we set forth additional reasons for this rule: the protection of corporate creditors by putting the proceeds of the recovery back in the corporation, the protection of the interests of all the shareholders rather than allowing one shareholder to prejudice the interests of other shareholders, and the adequate compensation of the injured shareholder by increasing the value of the shares when recovery is put back into the corporation.

[22] The Indiana Supreme Court, however, has recognized an exception to the general rule for closely-held corporations under certain circumstances, one that McLean claims applies in this case:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Barth II*, 659 N.E.2d at 562 (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)).

[23] In light of the circumstances of this case, we conclude, as a matter of law, that McLean has satisfied the *Barth II* test and therefore is allowed to proceed with his direct claims. McLean's pleadings, which were deemed admitted by the entry of default judgment against Defendants, establish that GMRT only ever had three members, McLean, Trisler, and Koeppen, all of whom are parties to this lawsuit, along with Rolling in Dough. As such, there is no danger of multiplicity of actions against the Defendants. Simply put, there is nobody else to sue them. Moreover, despite insinuations to the contrary, there is no evidence in the record that GMRT has any creditors who could be prejudiced by a judgment in McLean's favor. Finally, McLean being able to bring direct actions against the Defendants would not interfere with a fair distribution of the recovery, because there is no indication that there is any party other than McLean that is entitled to any. We conclude that the admitted allegations in McLean's pleadings satisfy the requirements of *Barth II*, allowing him to proceed with his direct claims.

## II.  Whether the Trial Court's Conclusion that McLean Failed to Establish Damages Was Clearly Erroneous[4]

[24]  McLean's direct monetary claims[5] that remain subject to further appellate review are his claims of forgery and counterfeiting against Trisler and Koeppen, breach of fiduciary duty against Trisler and Koeppen, fraud against Trisler, and unjust enrichment against Trisler, Koeppen, and Rolling in Dough.  McLean contends that the trial court erred in concluding that he failed to prove damages for any of his monetary claims after default judgment was entered.  Indiana Trial Rule 41(B) provides, in part, as follows:

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief.

[25]  In reviewing a motion for involuntary dismissal, we do not reweigh the evidence or judge the credibility of the witnesses; rather, we only consider the evidence most favorable to the judgment and the reasonable inferences to be

---

[4]  McLean characterizes the trial court's judgment as a judgment on the evidence entered pursuant to Trial Rule 50.  That rule, however, only applies "[w]here all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it[.]"  Because there was no jury or advisory jury in this case, the provisions of Trial Rule 50 do not apply.

[5]  Although we have concluded that McLean did not abandon his derivative claims at the damages hearing, only damages related to his direct claims were addressed during the hearing.  *See* Tr. Vol. III p. 149.

drawn therefrom. *Chem. Waste Mgmt. of Ind., L.L.C. v. City of New Haven*, 755 N.E.2d 624, 635 (Ind. Ct. App. 2001). We will reverse the trial court only if the trial court's judgment is clearly erroneous. *TMC Transp., Inc. v. Maslanka*, 744 N.E.2d 1052, 1054 (Ind. Ct. App. 2001), *trans. denied*. "A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *Id*. at 1055. Moreover, "[a] judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." *Id*.

[26] As mentioned, the trial court entered default judgment against the Trisler Parties for all claims on the question of liability, leaving only the issue of damages. It is well-settled that "[t]he effect of the default judgment is that the facts as alleged in the [complaint] are deemed admitted." *Progressive Ins. Co. v. Harger*, 777 N.E.2d 91, 95 (Ind. Ct. App. 2002) (citation omitted). "A default judgment has been defined as a confession of the complaint and it is rendered without a trial of any issue of law or fact." *Davis v. Davis*, 413 N.E.2d 993, 996–97 (Ind. Ct. App. 1980). Moreover, following the entry of default judgment, a defendant may no longer avail himself of substantive defenses. *See Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 338 (Ind. 1983) ("Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant. Thus, the question of a lack of causation

between plaintiff Shields' injuries and defendant Oxidermo's conduct would not have been a proper subject for consideration even in Oxidermo's first Rule 60(B) motion.") (citation omitted). However, "[w]here a default judgment is entered, only those issues presented by the complaint can be deemed concluded; the defaulting party cannot be charged with admitting matters not within the complaint by his default." *State Exch. Bank of Culver v. Teague*, 495 N.E.2d 262, 267 (Ind. Ct. App. 1986).

[27] The question, then, is whether either the allegations in the complaint and/or evidence admitted at the damages hearing support the trial court's conclusion that McLean failed to establish damages to a degree of certainty sufficient to justify an award. Generally,

> [t]he standard of review for a damage award is that no reversal will occur if the award is within the scope of evidence before the trial court; if the award of damages is supported by the record, the determination of damages is within the sound discretion of the trial court.

*Brant Const. Co. v. Lumen Const. Co.*, 515 N.E.2d 868, 872 (Ind. Ct. App. 1987), *trans. denied.*

> An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it. In determining whether the trial court abused its discretion, we must only consider the evidence and reasonable inferences favorable to the non-moving party. We may not weigh conflicting evidence or judge the credibility of witnesses.

*Menard, Inc. v. Comstock*, 922 N.E.2d 647, 650 (Ind. Ct. App. 2010) (citations omitted), *trans. denied.*

> Generally, no particular degree of certainty is required in awarding damages so long as the amount awarded is supported by evidence and not based merely on speculation or conjecture. [*National Advertising Co. v. Wilson Auto Parts, Inc.*, 569 N.E.2d 997, 1001 (Ind. Ct. App. 1991).] And the plaintiff carries the burden of proof as to damages. *Forbes v. Walgreen Co.* (1991), Ind. App., 566 N.E.2d 90. An exception to that general rule, however, was articulated by the court in *Refrigeration & Air Conditioning Institute v. Rine* (1946) 80 Ohio App. 317, 75 N.E.2d 473: "It is generally accepted that he who seeks damages for a breach of contract bears the burden of proof, *unless* a statute otherwise dictates or *knowledge is peculiarly within the possession of the other contracting party who must, in such case, bear the burden of producing it.*" M*Id.* at 320, 75 N.E.2d at 474 (emphasis supplied).

*JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945, 954 (Ind. Ct. App. 1992). "[W]here there is any doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer." *Babson Bros. Co. v. Tipstar Corp.*, 446 N.E.2d 11, 15 (Ind. Ct. App. 1983). "Moreover, '[a] monetary award often depends on estimation, for defendants may not keep (or may conceal) the data required to make an exact calculation.'" *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 656 (Ind. Ct. App. 2008) (citing *FTC v. QT, Inc.*, 512 F.3d 858, 864 (7th Cir. 2008)).

## A.  The Sale of Greek's West Clay

McLean's claim that he and GMRT suffered damages related to the unauthorized sale of Greek's West Clay is the only claim the trial court specifically addressed in its order. As mentioned, the trial court found that Greek's West Clay was sold for $350,000.00, and it was established by the entry of default judgment that the sale was unauthorized, McLean had a fifty-percent

interest in GMRT at the time of the sale, and McLean has never received any of the proceeds from that sale. In light of the above, we conclude that the trial court's finding that McLean failed to establish damages in this respect is clearly erroneous. Although the trial court found that Greek's West Clay had been sold for $350,000.00 (a sale that had been established to have been unauthorized by the entry of default judgment), it also found that "[i]t simply was not proven that Defendants had either received this sum in whole or whether it was being paid in installments pursuant to a promissory note and if so what the terms of the note were." January 24, 2019, Order p. 2. We fail to see how the method by which GMRT was paid for Greek's West Clay could possibly have a bearing on damages. If the buyer were to default on a note (if such a note exists), that is between the Trisler Parties and the buyer.

[30] The trial court also supported its ruling by stating that "[t]he Court cannot speculate on the issues of intercompany loans, debts and liabilities and therefore ultimately the net proceeds." January 24, 2019, Order p. 2. While it is true that the trial court may have been correct that it cannot speculate on evidence of loans, debts, and/or liabilities that was not presented, we conclude that it erred in resolving the uncertainty in favor of the Trisler Parties, who were, after all, the wrongdoers. *See Babson Bros.*, 446 N.E.2d at 15. In the absence of any evidence of debts or liabilities, the trial court's finding in this regard is clearly erroneous.

[31] In our view, this case is governed by *JKL*, which is to say that information regarding GMRT's debts and liabilities is knowledge that would be in the

possession of the Trisler Parties, placing the burden on them to produce it if they wished to rely upon it. As it is, the Trisler Parties produced no evidence whatsoever at the damages hearing that such debts and liabilities even existed, much less what those amounts might be. Through *every* fault of their own, the Trisler Parties were able to do nothing more than suggest during cross-examination of McLean at the damages hearing that such debts and liabilities existed, which is not evidence. Pursuant to our holding in *JKL*, the Trisler Parties' failure to produce any evidence regarding debts or liabilities of GMRT cannot support a finding that McLean failed to establish damages with sufficient specificity. To conclude otherwise would be to essentially reward the Trisler Parties for their recalcitrance and repeated defiance of the trial court's discovery orders. Consequently, we conclude that McLean is entitled to directly recover fifty percent of the sale price of Greek's West Clay, or $175,000.00.

## B. Conversion of GMRT Funds

[32] As mentioned, it was established by the entry of default judgment that Trisler made unauthorized withdrawals of $41,000.00 from GMRT with which to purchase Rolling in Dough, Koeppen made unauthorized withdrawals of $4000.00 from GMRT, and neither Trisler nor Koeppen ever repaid any of those funds to GMRT. To counter these established facts, the Trisler Parties suggested during cross-examination of McLean that the withdrawals were, in fact, proper, to which he responded that he lacked the necessary information to respond. As with the Trisler Parties' suggestions regarding GMRT's alleged

debts and liabilities, suggestions that the transactions were proper are not evidence. The admitted allegations, which were not countered by any evidence, are sufficient to establish damages in this respect. McLean has established direct damages of $22,500.00, or half of the $45,000.00 withdrawn, reflecting his fifty-percent share in GMRT.

# III. Attorney's Fees[6]

[33] McLean also argues that the trial court erred in failing to award him attorney's fees after it found that some of the Trisler Parties had violated discovery orders. Pursuant to Trial Rule 37(B)(2), in the event that a party fails to comply with a discovery order, "the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." On June 14, 2017, the trial court entered an order imposing sanctions for discovery violations and awarding McLean costs and attorney's fees incurred in attempting to secure discovery responses. The award of fees necessarily means that the trial court did not find that the Trisler Parties' non-compliance was justified or that the award of expenses would be unjust. On July 3, 2017, McLean requested $21,193.84 in costs and attorney's fees pursuant to the trial court's June 14 order, a request that the trial court has neither granted nor

---

[6] McLean does not identify this argument as a separate issue, including it in his damages argument. Because the award of attorney's fees for non-compliance with pre-judgment discovery orders is not damages, we address it separately.

denied. The trial court presumably failed to grant McLean's fee request because it ultimately entered judgment in favor of the Trisler Parties, but this is not a valid basis for denial. It is true that Indiana Code section 35-52-1-1(b) only allows an award of attorney's fees to "the prevailing party" under certain circumstances. In this case, however, fees were awarded pursuant to Trial Rule 37 for discovery violations, and Trial Rule 37 contains no provision that fees can only be awarded to the prevailing party. We conclude that the trial court erred in not granting McLean's request for costs and attorney's fees in the amount of $21,193.84.

# Conclusion

[34] We conclude that McLean has abandoned all claims against all Defendants except for Trisler, Koeppen, and Rolling Dough and that he has established that he has the right to pursue direct claims against those three defendants. We further conclude that the trial court erred in concluding that McLean failed to establish money damages for Trisler's and Koeppen's acts of forgery, counterfeiting, and breach of fiduciary duty; Trisler's acts of fraud; and the unjust enrichment of Trisler, Koeppen, and Rolling in Dough (as the beneficiary of Trisler's unauthorized withdrawals of GMRT funds).[7] Finally,

---

[7] We conclude that we do not need to further address the merits of most of McLean's remaining claims, which are derivative claims of breach of fiduciary duty, waste, self-dealing, misuse and misappropriation of corporate assets, theft, and conversion against Trisler and Koeppen; derivative claims of forgery and counterfeiting against Trisler and Koeppen; a derivative request for an accounting against Trisler and Koeppen; a derivative request for access to corporate records against Trisler, Koeppen, and Rolling in Dough; and a direct claim against Rolling in Dough for declaration of ownership rights. We conclude that

the trial court erred in failing to award McLean attorney's fees as a sanction for the Defendants' pre-judgment discovery violations. We remand for the entry of judgment in favor of McLean, as an individual, in the amount of $197,500.00, divided as follows: $175,000.00 against Trisler and Koeppen, $20,500.00 against Trisler and Rolling in Dough, and $2000.00 against Koeppen. We also remand for the entry of an award of attorney's fees in the amount of $21,193.84. We further instruct the trial court to determine the appropriateness of the award of up to three times the actual damages to McLean, the costs of the actions, reasonable attorney's fees, and/or other amounts which may be due pursuant to the CVRA.[8] Finally, we instruct the trial court to enter a

McLean's derivative claims against Trisler, Koeppen, and Rolling in Dough are either moot or that any relief granted on them would result in double recovery in the light of his direct recovery of money damages.

[8] Indiana Code section 34-24-3-1 provides, in part, as follows:

> If a person […] suffers a pecuniary loss as a result of a violation of IC 35-43 [offenses against property], the person may bring a civil action against the person who caused the loss for the following:
>   (1) An amount not to exceed three (3) times:
>     (A) the actual damages of the person suffering the loss[.]
>   (2) The costs of the action.
>   (3) A reasonable attorney's fee.
>   (4) Actual travel expenses that are not otherwise reimbursed under subdivisions (1) through (3) and are incurred by the person suffering loss to:
>     (A) have the person suffering loss or an employee or agent of that person file papers and attend court proceedings related to the recovery of a judgment under this chapter; or
>     (B) provide witnesses to testify in court proceedings related to the recovery of a judgment under this chapter.
>   (5) A reasonable amount to compensate the person suffering loss for time used to:
>     (A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or
>     (B) travel to and from activities described in clause (A).
>   (6) Actual direct and indirect expenses incurred by the person suffering loss to compensate employees and agents for time used to:

declaratory judgment in favor of McLean on his direct claim for the determination of ownership rights in Rolling in Dough.

[35] The judgment of the trial court is reversed, and we remand for further proceedings consistent with this opinion.

Vaidik, J., and May, J., concur.

---

      (A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or
      (B) travel to and from activities described in clause (A).
    (7) All other reasonable costs of collection.

It is worth noting that it is not necessary for there to be any criminal conviction or charge in order to recover pursuant to the CVRA. *See Wysocki v. Johnson*, 18 N.E.3d 600, 606 (Ind. 2014). On remand, McLean may present evidence that the acts of the Trisler Parties constituted an offense or offenses against property covered by the CVRA.